# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

ANTONIO GATTUSO,

    Plaintiff,

v.

C.C.S. MEDICAL DEP.,
CORRECT CARE SOLUTIONS,
MD. REG. OFFICE,
DR. RIVIERA,[1]

    Defendants.

Civil Action No. TDC-18-3470

## MEMORANDUM OPINION

Plaintiff Antonio Gattuso, a former detainee at the Anne Arundel County Detention Center ("AACDC") in Annapolis, Maryland, has filed a civil action under 42 U.S.C. § 1983 against Defendants Correct Care Solutions, Inc. ("CCS") and Dr. Luis Rivera-Ramirez, alleging denial of adequate medical care during his incarceration. Gattuso asserts that while he was in custody at AACDC he was denied the medication Gabapentin to treat his chronic pain and restless leg syndrome. Pending before the Court is Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will GRANTED.

---

[1] The Clerk shall amend the docket to reflect the full names of Defendants Correct Care Solutions, Inc., and Dr. Luis Rivera-Ramirez. As there are no entities named C.C.S. Med Dep. or MD Reg. Office, the Complaint is dismissed as to those entities.

## BACKGROUND

On June 25, 2018, Gattuso was transferred from the Howard County Detention Center ("HCDC") in Jessup, Maryland to AACDC. When Gattuso was transferred, HCDC provided a Transfer of Medical Information form that listed Gattuso's current medications as Chlordiazepoxide, Thiamine (Vitamin B-1), and Ibuprofen. The form reported that Gattuso was on a detox schedule. No other medical issues were noted.

The following day, Gattuso underwent an initial medical screening at AACDC. He did not report taking any prescribed medications but stated that he was being treated for post-traumatic stress disorder. He reported that he used heroin and cocaine and had a history of withdrawal, during which he had would have restless legs and a runny nose. Gattuso was referred for a withdrawal/detox assessment.

While at AACDC, Gattuso was prescribed various medications as part of the protocol for inmates going through detox and withdrawal, including Chlordiazepoxide; Meclizine, to address nausea and vomiting; Acetaminophen, for pain; and Loperamide for diarrhea. Gattuso also was prescribed the medications Thiamine, Atenolol, and Hydrochlorothiazide. According to his medical records, beginning on June 29, 2018, Gattuso began to refuse to take his prescribed medications.

On August 14, 2018, Gattuso was examined by a physician's assistant. When Gattuso complained of back pain radiating to his left leg, as well as pain in his right rotator cuff, the physician's assistant entered a medication order that same day prescribing Gabapentin, sometimes used to relieve nerve pain, for 30 days. On August 20, 2018, the physician's assistant submitted a medication order for Naproxen, a different pain reliever, for a seven-day period. On August 24, 2018, Gattuso submitted a healthcare request form stating that the physician's assistant had advised

him that if the medication was not provided by August 24, he should request a follow-up appointment.

On August 27, 2018, Gattuso was treated at the Emergency Department of the MedStar Harbor Hospital for acute maxillary sinusitis and acute left eye pain. He was discharged the same day. The hospital records listed Gattuso's current medications at discharge as Azithromycin and Fluticasone nasal, which had been prescribed by the emergency room physician; and Gabapentin, Hydrochlorothiazide, and Ibuprofen, which were listed as having been prescribed by his treating physician. Upon his return to AACDC, Gattuso was examined by a physician's assistant, to whom he expressed dissatisfaction with his emergency room visit. At that point, Gabapentin was not listed among Gattuso's prescribed medications in AACDC's medical records. Gattuso did have, however, an active prescription for Naproxen. During that evaluation, Gattuso did not complain of back pain or claim that he had been denied pain medication. Gattuso's medical records provide no other reference to a prescription for Gabapentin, no documentation that a Gabapentin prescription for Gattuso was ever approved by a physician, and no record that Gattuso ever received Gabapentin. Indeed, according to Gattuso, the Gabapentin prescription was never approved.

Dr. Rivera-Ramirez, who was employed by CCS to provide medical services at AACDC while Gattuso was incarcerated there, prescribed to Gattuso various medications to treat withdrawal symptoms resulting from drug addiction and other mental and physical disorders. He did not prescribe Gabapentin, which is most typically used to treat seizure disorders. According to Dr. Rivera-Ramirez, there is nationwide concern about prescribing Gabapentin because it is a drug subject to abuse. In light of Gattuso's history of drug abuse, Dr. Rivera-Ramirez concluded that it was not appropriate to prescribe him Gabapentin and instead prescribed other more

appropriate medications to address Gattuso's medical issues. There is no record that Gattuso filed any requests to the medical department that he be provided a different prescription regimen or complained that the medication prescribed did not treat his diagnosed conditions. In Dr. Rivera-Ramirez's view, "Gattuso was examined and treated with an appropriate standard of care." Rivera-Ramirez Decl. ¶ 14, ECF No. 22-4.

According to Dr. Rivera-Ramirez, Gabapentin is not prescribed to treat restless leg syndrome. In any event, Gattuso never informed Dr. Rivera-Ramirez that he suffered from restless leg syndrome, and Dr. Rivera-Ramirez never diagnosed Gattuso with that condition.

## DISCUSSION

Defendants seek dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56. In support of their Motion, Defendants argue that (1) Gattuso has not alleged sufficient facts to state a plausible claim for relief against CCS, as he has failed to identify any custom or policy to engage in deliberate indifference to serious medical needs; and (2) the record evidence establishes that Dr. Rivera-Ramirez did not violate Gattuso's constitutional rights because he was not deliberately indifferent to a serious medical need.

### I. Legal Standards

#### A. Motion to Dismiss

Defendants' Motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v.*

*Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). The Court will address Gattuso's claim against CCS under this standard.

### B. Motion for Summary Judgment

Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some indication that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

Here, the notice requirement has been satisfied by the title of Defendants' Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002); *Hamilton v. Mayor & City Council*

*of Balt.*, 807 F. Supp. 2d 331, 341 (D. Md. 2011). Gattuso has not asserted that he needs additional discovery in order to address the Motion. The Court therefore will construe Defendants' Motion as a motion for summary judgment as to Dr. Rivera-Ramirez.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

C.  **Deliberate Indifference**

The record does not make clear whether Gattuso was housed at AACDC as a pretrial detainee or as a convicted inmate. For convicted prisoners, the Eighth Amendment's prohibition on cruel and unusual punishment protects them from "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (citations omitted). In order to state an Eighth Amendment claim arising from inadequate medical care, a prisoner must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the plaintiff was suffering from a serious medical

6

need and that, subjectively, the defendant "kn[ew] of and disregard[ed] the risk posed by the serious medical need[]." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (citations omitted).

The Due Process Clause of the Fourteenth Amendment protects the rights of pretrial detainees to receive adequate medical care. *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001) (stating that "the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, mandates the provision of medical care" pretrial detainees "who require it") (citation omitted)); *Hill v. Nicodemus*, 979 F.2d 987, 990-91 (4th Cir. 1992). Pretrial detainees "retain at least those constitutional rights [held] by convicted prisoners." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see Patten v. Nichols*, 274 F.3d 829, 834 (4th Cir. 2001). Accordingly, the United States Court of Appeals for the Fourth Circuit has held that the Eighth Amendment deliberate indifference standard applies to Fourteenth Amendment claims by pretrial detainees of inadequate medical treatment. *Hill*, 979 F.2d at 991-92 ("[P]rison officials violate detainee's rights to due process when they are deliberately indifferent to serious medical needs." (citations omitted)); *see also Young v. City of Mount Rainier*, 238 F.3d 567, 575 (4th Cir. 2001) ("[D]eliberate indifference to the serious medical needs of a pretrial detainee violates the due process clause."); *Gordon v. Kidd*, 971 F.2d 1087, 1094 (4th Cir. 1992) (citation omitted) ("Pretrial detainees, like inmates under active sentence, are entitled to medical attention, and prison officials violate detainees' rights to due process when they are deliberately indifferent to serious medical needs."); *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990) ("The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee.").

In *Hill*, the court recognized that a pretrial detainee's protections under the Constitution could arguably be "greater" than those afforded to convicted prisoners, but it nevertheless adopted

the deliberate indifference standard for pretrial detainees. *Hill*, 979 F.2d at 991. Since *Hill*, however, the United States Supreme Court has called into question this equivalence between the standards applied to claims by pretrial detainees and those applied to claims by post-conviction inmates. In *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), the Court held that, unlike the standard applied to post-conviction detainees' excessive force claims under the Eighth Amendment, the standard for pretrial detainees' excessive force claims under the Fourteenth Amendment includes no subjective component. *Id.* at 2472-73. Several circuits have extended this reasoning to hold that the standard for pretrial detainees' claims of inadequate medical care under the Fourteenth Amendment should likewise not include a subjective component. *See, e.g., Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018); *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018). In *Gordon*, for example, the court held that a Fourteenth Amendment claim of inadequate medical care is to be evaluated under an "objective deliberate indifference standard" that requires "more than negligence but less than subjective intent— something akin to reckless disregard." *Gordon*, 888 F.3d at 1125 (requiring that a pretrial detainee show that the defendant did not take "reasonable available measures" to address a medical risk even though "a reasonable official in the circumstances would have appreciated the high degree of risk involved," such that the adverse consequences were "obvious"). Although it is sensible, after *Kingsley*, to conclude that a different, less stringent standard should be applied to the claims of pretrial detainees relating to inadequate medical care, this Court remains bound by Fourth Circuit precedent to apply the traditional deliberate indifference standard adopted in *Hill*.

Under this traditional test, the medical condition at issue must be objectively serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted). As for the subjective component, "[a]n official is deliberately indifferent

to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[I]t is not enough that an official *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (citations omitted). "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* Thus, "[d]eliberate indifference is more than mere negligence, but less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (citation omitted). Under this standard, a mere disagreement between an inmate and a physician over the appropriate level of care does not establish a constitutional violation absent exceptional circumstances. *Id.* Moreover, if the requisite subjective knowledge is established, an official may avoid liability by responding "reasonably to the risk, even if the harm ultimately was not averted." *See Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

## II.   CCS

CCS is a private corporation that, at the time of the events in question, had a contract to provide health care to AACDC detainees. An entity such as CCS may be held liable under § 1983 only to the extent that it has a custom or policy that causes a violation of the Constitution or laws of the United States, such as a policy of deliberate indifference to serious medical needs. *See Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727-28 (4th Cir. 1999); *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690-91 (1978). Here, the Complaint does not allege, and does not provide sufficient facts to show, that CCS has such a custom or policy. Accordingly, the Motion will be granted as to CCS, which will be dismissed as a defendant.

## III. Dr. Rivera-Ramirez

As for Dr. Rivera-Ramirez, the record does not support a conclusion that he acted with deliberate indifference to a serious medical need. The medical records establish that Gattuso was regularly seen by medical staff and that in response to his complaint of neuropathic pain, he was prescribed pain medication. Gattuso was also provided with an outside consultation at MedStar Harbor Hospital to address his medical needs. When treating Gattuso, Dr. Rivera-Ramirez determined that, in light of Gattuso's history of drug abuse and his specific medical issues, Gabapentin was not an appropriate medication to prescribe to Gattuso. Accordingly, other pain medications, such as Naproxen, were provided to treat Gattuso. There is no evidence that Dr. Rivera-Ramirez withheld medical treatment or failed to take action to address Gattuso's medical needs. Thus, the evidence establishes, at most, that Gattuso disagreed with Dr. Rivera-Ramirez's course of treatment, which is insufficient to state a constitutional claim. *See Scinto*, 841 F.3d at 225. Where Gattuso was regularly seen by medical providers and received medication for his conditions, and where Dr. Rivera-Ramirez made a medical determination not to prescribe Gabapentin, the Court concludes that the record, even viewed in the light most favorable to Gattuso, does not support a finding of deliberate indifference to his medical needs. The Court further notes that, even under an "objective deliberate indifference" test, the result would be the same, because the record does not support a conclusion that Dr. Rivera-Ramirez acted with "reckless disregard" or placed Gattuso "at substantial risk of suffering serious harm" that a reasonable official would have understood to be "obvious." *Gordon*, 888 F.3d at 1125. The Court will therefore grant summary judgment on Gattuso's constitutional claims. The Court need not and does not address Defendants' remaining asserted grounds for relief.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment will be granted. A separate Order shall issue.

Date: January 29, 2020

THEODORE D. CHUANG
United States District Judge